UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FRED PIERCE,

                        Plaintiff,                           **MEMORANDUM & ORDER**

             - against -                               09-CV-1564 (SLT) (VVP)

GAREB SHAMUS ENTERPRISES, INC.
d/b/a WIZARD PRESS and WIZARD
ENTERTAINMENT,

                        Defendant.
----------------------------------------------------------------X

**TOWNES, United States District Judge:**

       On April 15, 2009, Plaintiff Fred Pierce commenced this action against his former employer, alleging employment discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and related state law violations. After the Court dismissed several claims and Plaintiff filed an amended complaint, Defendant Gareb Shamus Enterprises, Inc. d/b/a Wizard Press and Wizard Entertainment ("GSE" or "Defendant") moved for summary judgment as to Plaintiff's remaining claims for age discrimination, hostile work environment, and violations of state law. For the reasons set forth below Defendant's motion is granted in part and denied in part.

**I.    BACKGROUND**

    **A.    Facts**

       The facts in this section are drawn largely from Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Def.56.1"), which unless indicated otherwise are

undisputed by Plaintiff's Counterstatement of Material Facts ("Pl.56.1").[1] The Court also relies on the depositions of Plaintiff, (Decl. of Violet E. Samuels. Esq., dated June 18, 2012 ("Samuels Decl."), Ex. 1 ("Pierce Dep.")), and Gareb Shamus, (Samuels Decl. Ex. 2 ("Shamus Dep.")).[2]

Plaintiff was hired by Gareb Shamus to work for GSE in December 1994. (Def.56.1 ¶¶, 1, 3). He was 42 years old at the time. (Def.56.1 ¶ 2). GSE was primarily in the business of publishing magazines related to the comic book industry. (Def.56.1 ¶ 5). Plaintiff was initially employed as executive vice president but later became president and chief operations officer ("COO"). (Def.56.1 ¶¶ 6, 7; Pierce Dep. at 9). Plaintiff directly oversaw personnel, day-to-day operations, publishing, conventions, accounting, marketing, sales, and GSE's finances. (Def.56.1 ¶ 8). Plaintiff earned approximately $120,000 to $235,000 per year in salary during his tenure at GSE and believed he had a "lifetime agreement" for employment. (Def.56.1 ¶¶ 11, 12). At certain times, GSE also employed Plaintiff's daughter, wife, and brother. (Def.56.1 ¶¶

---

[1] The Court notes that Plaintiff has filed a separate Statement of Material Facts. (Docket No. 78 ("Pl.Supp.56.1")). The document does not, however, offer any facts for the Court to consider. Apart from the final entry – which overstates certain deposition testimony – each paragraph cites only to the amended complaint.

[2] Plaintiff's failure to disclose his daughter and an ex-GSE employee as witnesses and his submission of their testimonial affidavits in opposition to summary judgment violates Federal Rules of Civil Procedure 26 and 37. (See Def. Reply at 3-4). Rule 26(a)(1)(A)(i) requires a party to disclose the names of "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses," while Rule 37(c)(1) provides that a party who "fails to provide information or identify a witness as required by Rule 26(a) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."
Plaintiff's opposition papers did not address this issue, nor did he seek leave to file a sur-reply in light of the objections Defendant raised in its Reply. Accordingly, the affidavits of Nitza Pierce and Edward DuPre, (Samuels Decl. Exs. 4, 5), were not considered. See, e.g., Gunawan v. Sake Sushi Restaurant, No. 09 CV 5018 (ALC), 2011 WL 3841420, at *4 n.1 (E.D.N.Y. Aug. 26, 2011); Humphrey v. New York Life Ins. Co., No. 04 CV 1001 (SJ), 2006 WL 3837718, at *7 n.5 (E.D.N.Y. Dec. 28, 2006). They would not, in any event, alter the Court's findings in this case.

2

14, 15, 16). Although the parties dispute the cause of GSE's financial shortfall, in 2008, Plaintiff and other employees agreed to pay reductions and GSE reduced its staff to sixty people. (Def.56.1 ¶¶ 17-22). Plaintiff was discharged by GSE on October 2, 2008, (Def.56.1 ¶ 4), and GSE continued to terminate other employees after that date, (Def.56.1 ¶ 35). Plaintiff felt that after 14 years with GSE, his employment did not end "in a normal way" with "normal severance conversations." (Def.56.1 ¶ 26; Pl.56.1 ¶ 26). Defendant states that GSE did not seek to fill Plaintiff's position, while Plaintiff asserts that his "job duties were being performed by Joe Yanerella." (Def.56.1 ¶ 33; Pl.56.1 ¶ 33). GSE has no ongoing operations apart from dissolution of the company. (Def.56.1 ¶ 35). Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 10, 2008. (Def.56.1 ¶ 25; Pl.56.1 ¶ 25).

Plaintiff claims that he was discriminated against based upon his age from the time of his hiring until his termination from GSE, (Def.56.1 ¶ 27), though he made no written complaints while he worked there, (Def.56.1 ¶ 32; Pl.56.1 ¶ 30). Plaintiff states that he verbally complained to Gareb and Stephen Shamus whenever a reference was made to his age. (Pl.56.1 ¶ 30). Plaintiff alleges that he was constantly referred to as the "old guy," described as "not hip and cool," and had his opinion disregarded because he was "too old to understand." (Def.56.1 ¶ 28; Pl.56.1 ¶ 28). He testified that when he attended a convention with Gareb Shamus and declined to go to a strip club, "it would be because of my age. They would make constant comments about the fact they were amazed someone my age could keep up." (Pierce Dep. at 31). He also asserts that Stephen Shamus recommended that he undergo liposuction to look younger. (Pl.56.1 ¶ 31).

3

Pierce alleges that when Gareb Shamus become involved with the International Fight League, "he and his brother became very age conscious. There would be constant comments the company would have be younger, hipper, and cooler." (Pierce Dep. at 31). He asserts that Gareb and Stephen Shamus told him "age was a factor in hiring people," such as when they chose a less qualified, but younger, candidate for a position at one of GSE's magazines. (Pierce Dep. at 40; Pl.56.1 ¶ 24). Additionally, Plaintiff testified that Gareb Shamus hired a new editor, Scott Grambling, to create a "cool, sexy, hip" magazine like Maxim, (Pierce Dep. at 41), and that Grambling wrote in an email about hiring a freelancer that "With all due respect to Jim and the good job he once did for this company, my feelings is that we need to get younger, hipper and cooler. Jim is a lot of things, but young, hip and cool he is not." (Def.56.1 ¶ 29; Decl. of Michael L. Ferch, Esq., dated Apr. 19, 2012 ("Ferch Decl."), Ex. 15).

In 2004, Plaintiff claims that when he opposed a change to a magazine logo, Gareb Shamus told him "he was too old to understand" and made the change anyway. (Pierce Dep. at 32). Plaintiff testified that when he gave Gareb Shamus a "recommendation as to how the website should be run he would tell me that I just didn't understand because of my age." (Pierce Dep. at 43). Gareb Shamus disputes these claims. He also testified that he could not recall any instances of disciplinary actions, warnings, or cautions with regard to Pierce and that he had been "happy with his performance" until the last year. (Shamus Dep. at 76-77).

While Defendant contends that Plaintiff was discharged due to his performance and external economic factors, Plaintiff's position is that any financial difficulties arose instead from Gareb Shamus' extracting money from GSE to pay personal expenses and to fund a separate venture. (Def.56.1 ¶¶ 18-20, 23, 24; Pl.56.1 ¶¶ 18-24).

There is also significant dispute as to whether the parties' relationship was governed by an employment agreement. Defendant argues that Plaintiff had no employment contract with GSE as COO, the position he held at the time he was terminated. (Def.56.1 ¶ 9). Indeed, Plaintiff testified at his deposition that he did not have an employment contract while in that role. (Pierce Dep. at 95). Nevertheless, he asserts that he had an "original" employment contract and that he and Gareb Shamus had "an ongoing understanding that he would be with the company on a continual basis." (Pl.56.1 ¶ 9). Plaintiff claims that he provided to his counsel a signed copy of a 14-page agreement, but his counsel lost the entire file on the day they appeared to take Gareb Shamus' deposition, when an earthquake struck New York City. (Pl.56.1 ¶ 9 n.5). Currently, the parties have an unsigned draft employment agreement and a one-page document signed by Gareb Shamus and Plaintiff, which established Plaintiff as executive vice president, detailed his salary and benefits, and set the "term of this employment contract" for two years, ending December 1, 1996, subject to renewal. (Samuels Decl. Ex. 6). Although these two documents bear the same date, October 31, 1994, the 14-page agreement is clearly unsigned and labeled "draft," while the one-page signed document is written in a different format and bears a different heading.

### B. Procedural History

On April 15, 2009, Plaintiff commenced this action against his former employer, GSE, Gareb Shamus, Susan Shamus, Kenneth Shamus, Stephen Shamus and Ilan Shamus, alleging employment discrimination and securities violations under various state and federal laws. The defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff responded by seeking leave to amend his complaint. On June 28, 2010, the Court determined that Plaintiff could amend as of right, but dismissed all claims except the discrimination claim

against GSE under the ADEA and most of the New York state and city discrimination claims. (Docket No. 23). On July 14, 2010, Plaintiff filed his amended complaint alleging (1) employment discrimination and wrongful termination; (2) hostile work environment; (3) breach of contract; (4) breach of implied contract; (5) malicious discharge; (6) and breach of duty of fair dealing. (Docket No. 25).

Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), arguing that Plaintiff has failed to show that he suffered discrimination and that he has not established the veracity of his state law claims. (Docket No. 73). Plaintiff argues in opposition that material facts are in dispute with regard to each of his claims. (Docket No. 77).

## II. LEGAL STANDARD

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Doninger v. Niehof, 642 F.3d 334, 344 (2d Cir. 2011). A court's role "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Goldberg & Connolly v. N.Y. Cmty. Bancorp, Inc., 565 F.3d 66, 71 (2d Cir. 2009). The movant's burden is met "if it can point to an absence of evidence to support an essential element of the nonmoving party's claim." Pavel v. Plymouth Management Group, Inc., 198 Fed. Appx. 38, 40 (2nd Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). Should the movant carry this burden, the non-movant "must come forward with evidence that would be sufficient to support a jury verdict in his favor." Goenaga v. March of Dimes Birth Defects Found, 51 F.3d 14, 18 (2d Cir. 1995). The non-movent cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts . . . or defeat the motion

6

through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal citations and quotation marks omitted).

The Second Circuit "has repeatedly emphasized 'the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent.'" Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (quoting Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008)). Nevertheless, it is well established that "summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001).

## III. DISCUSSION

### A. Federal Claims

#### 1. Age Discrimination

The ADEA provides that it is unlawful "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Courts in this circuit continue to apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), with regard to ADEA claims. Under McDonnell Douglas, a plaintiff "bears the initial burden of establishing a prima facie case of discrimination." Gorzynski, 596 F.3d at 106 (citing McDonnell Douglas, 411 U.S. at 802). If so established, the burden shifts to the defendant simply to produce "'some legitimate, nondiscriminatory reason' for its action." Id. (quoting McDonnell Douglas, 411 U.S. at 802). If the defendant articulates such a reason, the plaintiff may not rely on his prima facie case, but instead may prevail only by

7

showing "that the employer's determination was in fact the result of discrimination." Id. Indeed, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Financial Services, Inc., 557 U.S. 167, 180 (2009).

### a. Prima Facie Case

To establish a prima facie case under the ADEA, a plaintiff must show that "(1) he was within the protected group of employees (those over age 40); (2) he was qualified for the position in question; (3) he experienced an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discrimination." Delaney v. Bank of America Corp., No. 11 Civ. 8151 (PAE), 2012 WL 6135630, at *4 (S.D.N.Y. Dec. 11, 2012) (citing Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012)). The employee's burden is light at this stage, Gorzynski, 596 F.3d at 107, and "[o]ne might characterize it as minimal." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000).

In this case, Defendant concedes the first three elements of the prima facie case, but argues that Plaintiff has failed to establish that the facts raise an inference of age discrimination. (Def. Mem. at 5-6). As to the fourth element, Plaintiff contends that he suffered constant references to his age, the owners ignored his suggestions because of his age, the owners made hiring decisions based upon age, and that he was replaced after his termination.

First, even if Plaintiff is correct that he was in effect replaced by Yanerella, he has not specified that individual's age. Such information is relevant because "[a]n inference of discrimination 'cannot be drawn from the replacement of one worker with another worker insignificantly younger.'" Sullivan v. Brodsky, No. 07-cv-0003 (BSL), 2009 WL 2516838, at *7 (S.D.N.Y. Aug. 17, 2009) (quoting O'Connor v. Consolidated Coin Caterers Corp., 517 U.S.

308, 312-313 (1996)). Second, Plaintiff does little to establish that the age references had any causal connection to his discharge. Nevertheless, Plaintiff's burden at this stage is de minimis, see Abdu-Brisson, 239 F.3d at 467, and he has offered testamentary and documentary evidence to show that GSE decisionmakers made certain employment choices based upon age in an atmosphere that became increasingly and vocally focused on youth. Accordingly, the Court finds that Plaintiff has established a prima facie case as to age discrimination.

### b. Legitimate Nondiscriminatory Reason

Defendant claims that plaintiff was terminated "due to his poor work performance and the 2008 economic downturn in the publishing industry as it [a]ffected the Company." (Def. Mem. at 8) (citations omitted). Although Plaintiff argues that the financial distress of the company was the result of Gareb Shamus' extracting funds and not the economic downturn, he does not dispute that GSE laid off a significant number of employees prior to and after his discharge. Moreover, with regard to this part of the McDonnell Douglas analysis, a defendant's burden is "one of production, not persuasion." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000). Defendant has satisfied this burden.

### c. Pretext

Proceeding to the final step in the McDonnell Douglas analysis, Plaintiff "must adduce sufficient evidence to allow a rational fact finder to conclude that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." Sullivan v. Brodsky, 380 Fed. App'x 21, 21 (2d Cir. 2010) (internal quotation marks omitted). Defendant argues that it is "highly relevant" that Gareb Shamus was the individual who hired and fired Plaintiff. (Def. Mem. at 12). Although this "same-actor doctrine" applies most strongly "when the firing occurred only a short time after the hiring," Jetter v. Knothe Corp., 324

9

F.3d 73, 76 (2d Cir. 2003), it generally stands for the proposition that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire," Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997).

Even if the 14-year time span in this case mitigates the application of the same-actor doctrine, Plaintiff's ADEA claim suffers from other deficiencies. Viewing the evidence in the light most favorable to Plaintiff, even if he establishes that Gareb Shamus and others referred to him as the "old guy," said he was "too old to understand," and suggested that he was not "hip" or "cool," these instances do not support a conclusion that age was the but-for cause of Plaintiff's termination. That is because "[s]tray remarks in the workplace, by themselves, without a demonstrated nexus to the complained-of personnel action, will not defeat an otherwise well-founded motion for summary judgment." Mars v. Service Now for Adult Persons, 305 F. Supp. 2d 207, 214 (E.D.N.Y. 2004); see Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d 343, 362 (S.D.N.Y. 1999) ("Stray remarks even if made by the decision maker, do not constitute sufficient evidence to make [out] discrimination."). Indeed, while "ageist statements are an indication used to support a plaintiff's prima facie case that the discharge was based on age, they do not establish, on their own, direct evidence." Boyle v. McCann-Erickson, Inc., 949 F. Supp. 1095, 1101 (S.D.N.Y. 1997) (internal citation omitted).

Here, Plaintiff has not attempted to show a connection between his termination and the mostly undated age-related comments or email exchange with Scott Grambling. Moreover, even if the Court accepts that Yarenello replaced Plaintiff or assumed his duties, Plaintiff offers no support for the assertion that Yarenello was a "young male." (Pl.Supp.56.1 ¶ 34). The word "young" appears only in Plaintiff's opposition papers; as Defendant correctly observes, the

10

deposition testimony Plaintiff cites makes no mention of Yanerella's age. (Pierce Dep. at 45, 46). That Plaintiff was initially hired at the age of 42, (Def.56.1 ¶ 2), further "undercuts an inference of age discrimination," Boyle, 949 F. Supp. at 1104.

Plaintiff also challenges the financial distress of GSE as a pretext for his unlawful termination, claiming that Gareb Shamus was using GSE funds to pay for personal expenses and seed a new company. (Pl. Opp. at 20). It is wholly conclusory, however, for Plaintiff to assert that age was therefore the basis for his firing. Whatever the cause of GSE's financial troubles, Plaintiff concedes that sometime in 2008, he and other employees agreed to reductions in pay (Def.56.1 ¶ 21), and that in the fall of 2008, GSE laid off approximately one third of its work force, (Def.56.1 ¶ 22). Plaintiff was terminated in October 2008, and GSE laid off additional workers after that date. (Def.56.1 ¶ 35). Accordingly, there is evidence that financial stress – even if caused by Garub Shamus' actions – was a contributing factor to layoffs at GSE, which Plaintiff has not rebuffed. See Shortt v. Congregation KTI, No. 10 Civ. 2237(ER), 2013 WL 142010, at *8 (S.D.N.Y. Jan. 9, 2013) ("In addition to showing that the defendant discriminated against him on the basis of age, the plaintiff must also show that age discrimination was a 'but-for' cause of the adverse action, and not merely one of the motivating factors.").

In sum, while Plaintiff offers testimony and certain documentary evidence that staff and even decisionmakers at GSE made comments concerning his age, considered age with regard to hiring other employees, and engaged in behavior that suggested a general preoccupation with youth, he has offered no argument – much less evidence – to show that these age-related incidents had any nexus to his termination. In contrast, the undisputed facts are that Plaintiff was above the age of 40 when hired by the same person who later fired him fired him, that the company laid off a significant number of workers shortly before his termination (and some

11

after), he and others agreed to pay reductions, and there is no evidence to show that a younger employee replaced him. Viewed in the light most favorable to Plaintiff, the evidence does not support a finding that age was the but-for cause of his termination. Plaintiff's first cause of action therefore is dismissed.

### 2. Hostile Work Environment

A hostile work environment exists under the ADEA "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations and internal quotations omitted).[3] To survive summary judgment, a plaintiff must establish "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [the] working environment." Castellanos v. Montefiore Med. Ctr., No. 09 Civ. 9400 (LAP), 2012 WL 4471573, at *6 (S.D.N.Y. Sept. 27, 2012) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)). The conduct at issue must not only create "an objectively abusive work environment," but the Plaintiff must subjectively perceive the environment as abusive." Id. at *7 (citing Harris, 510 U.S. at 21). The "objective hostility . . . depends on the totality of the circumstances," Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 176 (2d Cir. 2012), including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," Harris, 510 U.S. at 23.

---

[3] In his amended complaint, Plaintiff alleges hostile work environment pursuant to 42 U.S.C. § 1981. (Am. Compl. ¶ 1). In his opposition papers, however, he expressly adopts Defendant's legal standard for a claim brought pursuant to the ADEA. (Pl. Opp. at 21-22). The Court notes that a hostile work environment claim brought under either provision faces the same analysis. See Barbosa v. Continuum Health Partners, Inc.,716 F. Supp. 2d 210, 217 n.57 (S.D.N.Y. 2010) (collecting cases).

12

In this case, Plaintiff alleges that GSE was "permeated with discriminatory intimidation and hostility based solely on age." (Pl. Opp. at 21). In support of these allegations, he offers the text of one email and his own deposition testimony. Casting a wide net through these sources, the Court considers the following alleged incidents:

(1) "From the very beginning when I came to the company. I was 42 years old, . . . Gareb immediately told people that he hired me because he needed an old guy to run the company. . . It was a general discussion. He would say it in the company, he would say it to our bankers, vendors . . . [i]n my presence and not in my presence. There was constant reference made to my age." (Pierce Dep. at 30-31).

(2) "If we were at a convention and I didn't want to go to a strip club with Gareb it would be because of my age." (Pierce Dep. at 31).

(3) "I would often be the first one on the floor . . . and . . . the last one off the floor at a convention and they would often say . . . that it's amazing a guy your age can be doing this." (Pierce Dep. at 31).

(4) "When Gareb got involved with the International Fight League he and his brother became very age conscious. There would be constant comments the company would have be younger, hipper, and cooler." (Pierce Dep. at 31).

(5) "Stephen would constantly talk about having the ring girls and Gareb should leave Lisa because she was too old for him." (Pierce Dep. at 33).

(6) "In 2004, . . . when I told Gareb it wasn't appropriate for the magazine [to change its logo] he told me I was too old to understand" and went "[b]ehind my back" to change the logo. (Pierce Dep. at 31-32).

(7) "Through 2007, 2008 . . . I told [Gareb and Stephen] it was inappropriate to be speaking this way in an office." (Pierce Dep. at 34).

(8) "[T]wo or three years prior . . . to me being released [Gareb] had a hair transplant because he wanted to look younger and sexier and at the time he recommended that I should dye my hair so I could look younger." (Pierce Dep. at 38).

(9) "Stephen had liposuction in September and Stephen recommended to me in order to look younger and hipper he said I should think about having liposuction too." (Pierce Dep. at 38).

13

(10) "Probably [beginning] about 2006 that the company needed to be younger, hipper, and sexier." (Pierce Dep. at 39).

(11) "[W]e were looking at two candidates to be involved in our Toy Wishes Magazine . . . . Liz Werner was younger and Wendy Smolen was clearly more qualified . . . . Gareb wanted to hire Liz because she was younger." (Pierce Dep. at 40).

(12) "[Gareb] didn't want me to be involved in the [dot com website] . . . because he thought I was too old to understand that area." (Pierce Dep. at 42-43).

(13) "When I wanted to hire Jim back to work on a successful column, Scott answered me in an email that Jim wasn't young, hip, or cool." (Pierce Dep. at 46; see Ferch Decl. Ex. 15).

Defendant argues that Plaintiff willingly stayed at GSE for 14 years, that he would have discouraged his family members from working there if hostile conditions existed, that Plaintiff never made a formal complaint until after his termination, and that as COO he was in a position of authority to combat such behavior. (Def. Mem. at 14).

Other than the "old guy" comments at the beginning of his tenure, Plaintiff does not offer concrete examples of ageist comments or actions until approximately 2004, some of which are not directed at him. Additionally, no single incident is severe enough in this case to constitute actionable conduct. Nevertheless, considering the evidence over many years in its totality and in the light most favorable to Plaintiff, the Court is not persuaded to find as a matter of law that he was not subjected to a hostile work environment. Accordingly, summary judgment is denied as to the fourth cause of action.

B.  **State Law Claims**

A federal court's exercise of supplemental jurisdiction over a plaintiff's state law claims is not automatic, but "is a favored and normal course of action." Promisel v. First Am. Artificial Flowers, 943 F.2d 251, 254 (2d Cir. 1991). As a general rule, supplemental jurisdiction is appropriate where, as here, the employment-related claims arise from the same underlying factual basis. See, e.g., Treglia v. Town of Manlius, 313 F.3d 713, 723 (2d Cir. 2002) (finding exercise of supplemental jurisdiction proper where plaintiff's state and federal claims arose "out of approximately the same set of events").

1.  **Breach of Contract**

The parties agree that New York law governs the breach of contract claim and requires that a plaintiff show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). In this case, Plaintiff maintains that an employment agreement governed his relationship with GSE and that he was terminated without cause and in violation of its terms. (Pl. Opp. at 28-30). Yet, Plaintiff has produced only an unsigned 14-page draft agreement and a separate one-page employment contract with a two-year term, ending December 1, 1996. (Samuels Decl. Ex. 6). As noted, Plaintiff contends that his attorney lost a signed copy of the 14-page agreement and he was unable to locate another. (Pl. Opp. at 27).

In contrast to the argument he makes in his oppositions papers, however, Plaintiff testified, twice, that when he was president and COO of the company he did not have an employment contract. (Pierce Dep. at 95 ("I answered that. No.")). Additionally, even if the Court were to credit Plaintiff's assertion that the parties had signed the 14-page employment agreement and it was attached to the one-page contract, there is nothing to indicate that its terms

15

continued beyond the two-year period set forth in the latter document. Such an interpretation is consistent with Plaintiff's testimony that by the time he became president and COO, he did not have an employment contract. Furthermore, he has not shown that he "relie[d] to his detriment on an employer's express written policy limiting its right to discharge," which is often contained in an employee handbook. Gencarelli v. Cablevision Sys. Corp., No. 10-cv-4092, 2012 WL 1031441, at *3 (E.D.N.Y. Mar. 27, 2012). It is undisputed that Defendant had no such policy. Accordingly, as Plaintiff has failed to satisfy even the first element of his breach of contract claim, his second cause of action is dismissed.

### 2. Breach of Implied Contract

Plaintiff testified at his deposition that "[m]y understanding was that I had a lifetime agreement with the company, I was going to be there for lifetime because of how the company was run." (Pierce Dep. at 97). While Plaintiff contends that "he and Gareb Shamus [had] an ongoing understanding that he would be with the company on a continual basis," (Pl.56.1), such "understandings" or "oral assertions do not support a claim for breach of implied contract." Reddington v. Staten Island Univ. Hosp., 373 F. Supp. 2d 177, 190 (E.D.N.Y. 2005). Without an employment agreement to indicate otherwise, "the Court presumes plaintiff was an at-will employee and [his] claim for breach of contract is dismissed." Id. at 190-91 (citing Ullmann v. Norma Kamali, Inc., 207 A.D.2d 691, 692 (1st Dep't 1994) (dismissing breach of contract claim at pleadings stage where plaintiff was at-will employee and allegations of oral assurances of employment were insufficient to overcome presumption that employment was freely terminable)). Plaintiff offers no case law to the contrary, instead directing the Court's attention to his breach of contract arguments and requesting "that the Court impose an obligation upon the

16

defendant to stop the injustice and unjust enrichment." (Pl. Opp. at 32-33). Defendant's motion therefore is granted as to the third cause of action.

### 3. Wrongful Termination and Malicious Discharge

Plaintiff alleges that "[t]here was no valid reason or just cause for terminating [his] employment" and that Defendant did so "on account of his age and thereby violated his right to equal employment opportunity as protected by the ADEA." (Am. Compl. ¶¶ 78, 79; see Am. Compl. ¶ 85). To the extent that he invokes the protection of the ADEA, these claims are simply duplicative of the federal law claim this Court has already dismissed. To the extent he means to assert state law claims, "well-settled New York law holds that no implied covenant of good faith and fair dealing attaches to at-will employment contracts." Thompson v. Bosswick, 855 F. Supp. 2d 67, 85 (S.D.N.Y. 2012) (citations and internal quotation marks omitted). As noted, Plaintiff has not adduced facts to show that he was not an employee at will. In any event, Plaintiff fails to offer any opposition to Defendant's arguments regarding these fifth and sixth causes of action. See Lipton v. Cnty. of Orange, N.Y., 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("The Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."). Accordingly, they are dismissed.

### 4. Breach of Duty and Fair Dealing

Although the amended complaint is rather vague as to the substance of this claim, Plaintiff explains in his opposition papers that it is a "claim for breach of fiduciary duty . . . arising out of his discharge in bad faith by the controlling shareholders in violation of their fiduciary duty owed to him as a minority shareholder in a close corporation." (Pl. Opp. at 33). This claim appears somewhat different from the one the Court dismissed in its June 28, 2010, order: the previous version involved allegations that individual defendants wasted company

assets and failed to provide Plaintiff with financial information, (Docket No. 23 at 9), while the current version argues that Plaintiff's wrongful termination deprived him of his employment and opportunity to realize profit on his investment, (Pl. Opp. at 33-34).

As an initial matter, Plaintiff asserts this claim against unnamed "individual defendants," who do not appear in this case. (Pl. Opp. at 33). Substantively, Plaintiff, an at-will employee, argues that he is entitled to fiduciary-rooted protection against termination simply by virtue of his minority shareholder status. While Plaintiff may be correct that generally "it is the fiduciary duty owed by . . . majority shareholder[s] in a closely held corporation to a minority shareholder, not to engage in oppressive actions toward minority shareholders," Rusyniak v. Gensini, 629 F. Supp. 2d 203, 224 (N.D.N.Y. 2009) (citations omitted), it is also true that "a shareholder of a closely held corporation who is also an employee cannot recover for breach of fiduciary duty where the claim is essentially an employment dispute," Wall Street Sys., Inc. v. Lemence, 04 Civ. 5299 (JSR), 2005 WL 2143330, at *8 (S.D.N.Y. Sept. 2, 2005). In this case, Plaintiff "cannot be allowed to evade the employment at-will rule and relationship by recasting his cause of action in the garb of a tortious interference with his employment." Ingle v Glamore Motor Sales, 73 N.Y.2d 183, 189 (N.Y. 1989); see Hoheb v. Pathology Assoc. of Albany, P.C., 146 A.D.2d 919, 920 (3rd Dep't 1989) (finding no breach of fiduciary duty of fair dealing by majority shareholder in close corporation, independent of an employment contract, where plaintiff alleged scheme to "squeeze" him out). Plaintiff's seventh cause of action therefore is dismissed.

**IV.	CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment (Docket No. [73]) is DENIED as to Plaintiff's fourth cause of action for hostile work environment and is GRANTED as to all other claims, which are dismissed with prejudice. The parties are directed to confer and by April 19, 2013, contact the Chambers of Magistrate Judge Viktor V. Pohorelsky to schedule a settlement conference.

**SO ORDERED.**

_____/S/_____
SANDRA L. TOWNES
United States District Judge

Dated:	March 29, 2013
	Brooklyn, New York